### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA DALLY                                                  :
                                                            :
                                                            :
            v.                                              :       2:26-cv-00025
                                                            :
TRANSUNION LLC, BENEFICIAL STATE            :
BANK                                                        :


### MEMORANDUM

This matter comes before the Court on Defendant Beneficial State Bank's

(BSB) Motion to Dismiss.  In its Motion, Defendant BSB seeks to dismiss with

prejudice Count II of Ms. Lisa Dally's (Plaintiff) complaint for failure to state a claim

under Fed. R. Civ. P. 12(b)(6).  *See* Def.'s Mot., at 1.  This Court's analysis focuses on

the plausibility of Plaintiff's claims under the Fair Credit Reporting Act (FCRA), 15

U.S.C. §§ 1681s-2(a) and 1681s-2(b).  *See id.*, at 3.  As this Court now explains,

Plaintiff fails to allege a statutory violation in her complaint and thus fails to state a

claim.  Since amendment would be futile, the Court will dismiss Plaintiff's complaint

with prejudice.  Accordingly, the Court will grant Defendant's Motion in full.

### I.      BACKGROUND & FACTUAL ALLEGATIONS

Plaintiff is a natural person and resident of Eatonville, Washington.  *See*

Compl. ¶ 4.  Defendant BSB is a "furnisher" of information to credit reporting

agencies under the relevant definition in 15 U.S.C. § 1682s-2. *See id.* ¶ 5.  Defendant

BSB regularly conducts business in Pennsylvania with its principal place of business

in Oakland, CA.  *Id.*  Defendant TransUnion LLC (TransUnion) is a "consumer reporting agency" (CRA) recognized under 15 U.S.C. § 1681a(f) and regularly conducts business in Pennsylvania.  *See id.* ¶ 6.  It "assembl[es], evaluat[es], and disburs[es] information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties."  *Id.*

Sometime around or before September 2025, Plaintiff obtained an automobile loan from Defendant BSB.  *Id.* ¶ 8.  Defendant BSB subsequently furnished information pertaining to this loan to Defendant TransUnion.  *Id.* ¶ 8-10.  According to Plaintiff's Complaint, she "noticed errors" in TransUnion's reporting of her BSB account. Plaintiff alerted TransUnion of these alleged errors and filed a dispute.  *Id.* ¶ 10-11.  After forwarding the dispute to Defendant BSB, who "verified the information as accurate," Defendant TransUnion reforwarded the "investigation results" to Plaintiff without any alterations.  *Id.* ¶ 12-13.

Plaintiff alleges that she submitted the dispute to Defendant TransUnion a second time, claiming again that Defendant BSB's findings were inaccurate.  *Id.* at 14.  Upon receipt of the dispute, Defendant BSB once again "verified the information as accurate."  *Id.* at 15.  At no point during this period did Defendant BSB mark Plaintiff's account as disputed.  *Id.* at 16.

Plaintiff claims that because Defendant BSB failed to mark her account as "disputed," the allegedly inaccurate account information and its corresponding status were reported to third parties.  *Id.* ¶ 16.  She further claims that Defendant BSB

"failed to comply with the requirements imposed on furnishers of information" pursuant to § 1681s-2(b) in that it willfully and negligently:

> (a) supplied the [CRA]s with information about Plaintiff that was false, misleading, and inaccurate[;]… (b) failed to mark its account as disputed by Plaintiff[;]… (c) failed to conduct an investigation of the inaccurate information that Plaintiff disputed[;]… (d) failed to report the results of its investigation to the relevant [CRA]s[;]… (e) failed to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all [CRA]s, concerning the inaccurate information disputed by Plaintiff[;]… (f) continued to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to [CRA]s[;]… and (g) provided false, misleading, and inaccurate information to CRAs.

*Id.* ¶ 29-35.  Plaintiff claims that "as a direct and proximate cause of [Defendant BSB]'s failure to perform its duties under the FCRA, [she] has suffered injury to her credit worthiness, including an inability to get a mortgage."  *Id.* at 36.[1]  She also claims that she has suffered "embarrassment, humiliation, and other emotional injuries as a result of errors on her credit report…"  *Id.*  Plaintiff, as a result, seeks unspecified statutory, punitive, and actual damages, along with attorney's fees and costs."  *Id.* at 5.

## II.    PROCEDURAL HISTORY

Plaintiff filed her complaint in the Court of Common Pleas of Delaware County, Pennsylvania, on December 16, 2025, alleging that TransUnion (Count I) and BSB (Count II) violated the Fair Credit Reporting Act (FCRA), respectively.  *See* Compl., at 1, 3-5.  Defendants removed the case to the United States District Court for the

---

[1]    Regarding this allegation, Plaintiff incorrectly refers to Defendant *BSB* as "GLS" and assigns "he" as a personal pronoun to Plaintiff rather than *"she." See* Compl. ¶ 36.  Because GLS is neither a party to this lawsuit nor mentioned elsewhere in the Complaint, and Plaintiff's only pronoun in the Complaint is "she," the Court is convinced this paragraph was copied and pasted from another brief.

3

Eastern District of Pennsylvania on January 5, 2026, asserting federal question jurisdiction, pursuant to 28 U.S.C. § 1331. *See* Def.'s Not. of Removal (E.D. Pa. Jan. 5, 2026). On February 11, 2026, Defendant BSB filed a Motion to Dismiss Count II for failure to state a claim. *See* Def.'s Mot. The Court will now consider Defendant BSB's Motion to Dismiss, under Fed. R. Civ. P. 12(b)(6).

## III.   STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.)

To determine whether a complaint states a claim, a court must accept all of Plaintiff's factual allegations as true. *Iqbal*, 556 U.S. at 678. However, a court may dismiss a complaint that contains no "more than unadorned, the-defendant-unlawfully-harmed-me accusation" and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

4

Courts need not accept "legal conclusion[s] couched as factual allegation[s]." *Twombly*, 550 U.S. at 555; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal is warranted when a complaint alleges "facts [that] do not permit the court to infer more than a mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## IV.    DISCUSSION

Count II is dismissed with prejudice because (A) Plaintiff does not allege facts showing Defendant violated § 1681s-2(b), (B) a private right of action does not exist under § 1681s-2(a), and (C) amendment would be futile.[2]

### A.  Plaintiff fails to adequately plead Defendant BSB violated § 1681s-2(b).

Plaintiff does not factually allege that Defendant BSB: (1) violated the enumerated requirements set forth in § 1681s-2(b)(1); (2) abridged its obligation to mark Plaintiff's account as disputed pursuant to § 1681s-2(b)—an obligation only imposed upon a furnisher when a CRA reports a "potentially meritorious" notice of dispute to the furnisher; (3) is liable for actual damages stemming from a substantive violation of the duties set forth in § 1681s-2(b)(1); or (4) is liable for statutory and punitive damages.

---

[2]    Plaintiff filed suit for violations of FCRA against Defendants TransUnion (Count 1) and BSB (Count 2). As Defendant TransUnion previously settled this matter, Count 2 is the only remaining cause of action.

### 1. Plaintiff does not factually allege a violation of any enumerated requirements of § 1681s-2(b)(1).

When a CRA receives notice of a dispute from a consumer regarding the completeness or accuracy of any information provided by a furnisher, the furnisher—upon being notified of the dispute—must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the [CRA] pursuant to [§] 1681i(a)(2)…;

(C) report the results of the investigation to the [CRA];

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRA]s to which the person furnished the information…; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a [CRA] only, as appropriate, based on the results of the reinvestigation promptly--

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

§ 1681s-2(b)(1). As Defendant BSB argues in its motion, Plaintiff "merely offers legal conclusions that BSB failed to satisfy each enumerated requirement without *any* factual allegations" in support of those conclusions. Def.'s Mot., at 3 (emphasis added). Plaintiff's allegations are confusingly circular, which precludes an inference that Defendant BSB violated the enumerated statutory requirements, even when taken as true and viewed in the light most favorable to Plaintiff.

> **a. The Complaint alleges no facts suggesting Defendant BSB failed to conduct an investigation into the disputed information or that Defendant BSB failed to review all relevant information reported by Defendant TransUnion about the disputed account.**

A furnisher must immediately conduct a reasonable investigation into disputed information upon receiving a notice of dispute from a CRA. § 1681s-2(b)(1)(A); *see Seamans v. Temple Univ.*, 744 F.3d 853, 864-65 (3d Cir. 2014). A reasonable investigation is one conducted with protocols "that a reasonably prudent person would undertake under the circumstances." *Id.*

Here, rather than offering any factual basis, the Complaint merely claims that Defendant BSB "failed to conduct an investigation," without any supporting facts. *See* Compl. ¶ 31. Furthermore, the Complaint fails to resolve the tension between this contention that Defendant BSB failed to investigate and its later conflicting admission that Defendant BSB "verified [the disputed] information as accurate" and that such "investigation results" were subsequently relayed to Plaintiff. See *id.* ¶ 12-13, 15, 17. It is presumed that Plaintiff does not agree with the results of Defendant BSB's investigation. However, in addition to her allegations supporting the fact that an investigation was conducted, nowhere in the Complaint does Plaintiff state facts indicating that the investigation was unreasonable. Therefore, the Complaint fails to adequately allege a violation of this enumerated statutory requirement. Instead, as Defendant BSB argues, "'the Complaint merely presents an 'unadorned, the defendant-unlawfully-harmed-me accusation'" comprised of "naked assertion[s]"

devoid of "further factual enhancement." Def.'s Mot., at 3 (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557)).

The FCRA also requires that a furnisher "review all relevant information provided by a CRA" in response to the notice of dispute. *See* § 1681s-2(b)(1)(B). However, the Complaint contains no facts regarding the effect or the amount of information Defendant BSB reviewed. Thus, the Complaint fails to allege any facts suggesting a violation of this enumerated requirement as well.

> **b. The Complaint alleges no facts suggesting Defendant BSB failed to report the results of its investigation to Defendant TransUnion or other CRAs.**

A furnisher must report its investigative findings to the CRA that dispatched the notice of dispute. *See* § 1681s-2(b)(1)(C). Here, as with its first allegation, the Complaint merely states the conclusory contention that Defendant BSB "willfully and negligently failed to report the results of its investigation to the relevant [CRA]s," without any factual support for such a violation. *See* Compl. ¶ 32. Plaintiff's admissions hinder her own contentions. She alleges that after Defendant TransUnion notified Defendant BSB of the dispute, Defendant BSB again and again "verified ["the investigation result"] as accurate." *See id.* ¶¶ 12-17. Plaintiff not only alleges that BSB relayed its investigation results to Defendant TransUnion, the CRA that communicated Plaintiff's notice of dispute, but also that it did so repeatedly. Therefore, Plaintiff failed to adequately allege that Defendant BSB failed to report its investigative results.

### c. The Complaint alleges no facts suggesting that Defendant BSB found any incomplete or inaccurate information during its investigation or failed to report or correct such deficiencies.

*Only if* a furnisher—through its own investigation—confirms that the disputed information is inaccurate or incomplete must it cure those deficiencies, bar the reporting of the disputed information, and report the investigative findings to the CRAs to which it furnished the disputed information. *See* §§ 1681s-2(b)(1)(D)-(E). Here, the Complaint offers yet another conclusory statement, devoid of any factual basis, contending that Defendant BSB "willfully and negligently supplied the [CRA]s with information about Plaintiff that was false, misleading, and inaccurate" and that Defendant BSB did so repeatedly despite receiving the notification of dispute. *See* Compl. ¶ 29, 34. The Complaint contains no information alleged to be *false, misleading, or inaccurate*, nor does it allege anything regarding the substance or scope of the information reported to CRAs. Instead, the only fact that Plaintiff alleges is that Defendant BSB repeatedly "verified [the disputed] information as accurate" and that such "investigation results" were subsequently relayed to Plaintiff. See *id.* ¶ 12-13, 15, 17. If taken as true, this admission indicates not only that Defendant BSB complied with its statutory obligation to investigate the disputed information, but, more crucially, that there were no fallacies or deficiencies to correct or report. Therefore, as with the other enumerated requirements of the statute, Plaintiff fails to allege that Defendant violated this requirement.

9

### 2. Plaintiff does not adequately plead that a "potentially meritorious" dispute imposed an obligation upon Defendant BSB to mark Plaintiff's account as disputed.

Pursuant to § 1681s-2(b), a furnisher must mark an account as *disputed* if the furnisher receives a notice of dispute from a CRA; however, this obligation only arises when the dispute is deemed "potentially meritorious." *See Seamans*, 744 F.3d at 867. "Potentially meritorious" disputes are deemed such only if the notice of dispute identifies "material inaccuracies." *See Scarbo v. Wisdom Fin.*, 2022 WL 309161, at *8-9 (E.D. Pa. Feb. 2, 2022) (Savage, J.); *see also Seamans*, 744 F.3d at 867 (holding that an obligation to mark an account as disputed did not exist absent reported "material inaccuracies" in the notice of dispute). Further, this circuit has noted that furnishers are optimally "position[ed] to determine whether" a dispute is "potentially meritorious." *Horsch*, 94 F. Supp. 3d at 679 (citing *Seamans*, 744 F. 3d at 867 n.11).

Here, the Complaint alleges that Defendant BSB "failed to mark the account as in dispute… despite knowing that Plaintiff disputed the reporting of the account." Compl. ¶ 16, 30. However, as Defendant argues, the Complaint fails to allege that the dispute was "potentially meritorious" because it includes no facts "pertaining to any inaccuracy, let alone a "material inaccuracy" that would trigger [Defendant] BSB's obligation to mark the account as disputed." Def.'s Mot., at 7. Additionally, as the Court held in *Seamans*, the furnisher, by its own investigation and discretion, has the authority to designate an account as disputed; this determination is not made by the consumer. *See, e.g., SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). Notably, Plaintiff's dispute with respect to her credit report does

10

not require her furnisher to mark it accordingly.   Thus, Defendant BSB had no obligation to mark Plaintiff's account as disputed, and it did not abridge that obligation by refusing to do so.

### 3. Plaintiff does not adequately plead a claim for actual damages.

Pursuant to § 1681o, a furnisher must have substantively violated the enumerated requirements set forth in § 1681s-2(b) to be eligible for actual damages. *See* § 1681o; *see Horsch*, 94 F. Supp. 3d at 678-80 (dismissing claim for actual damages where underlying allegations of § 1681s-2(b) violations were inadequate). Here, because the Complaint does not adequately allege a violation of any enumerated requirement of the statutory section, Plaintiff is not eligible for damages.

### 4. Plaintiff does not adequately plead a claim for statutory and punitive damages.

To plead statutory and punitive damages, a plaintiff must allege that the defendant acted willfully. *See* § 1681n. A claim of willfulness must be backed by facts that permit an inference that the defendant acted with a knowing or reckless disregard for the FCRA's requirements. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007).   The plaintiff must allege that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 970 (3d Cir. 1996), *abrogated on other grounds* by *Cortez v. TransUnion LLC*, 617 F.3d 688 (3d Cir. 2010).   An act is only willful if it is "objectively unreasonable" and reveals a "substantially greater" risk of violating the FCRA than a risk of mere carelessness. *See Seamans*, 744 F.3d at 867-

11

68. A defendant has not acted willfully where it "acted on a reasonable interpretation of [the] FCRA's" standards. *Dennis v. TransUnion LLC*, 2014 WL 5325231, at \*8 (E.D. Pa. Oct. 20, 2014).

Here, Plaintiff fails to adequately plead that Defendant BSB violated the FCRA's enumerated requirements, let alone that Defendant BSB acted willfully in doing so. The Complaint merely attaches the word "willfully" to many of its conclusory allegations without factual enhancement, which Plaintiff mistakenly deems sufficient to entitle Plaintiff to damages. *See* Compl. ¶¶ 27-35, 37. As the Supreme Court held in *Burr*, an allegation of willfulness requires a factual foundation. *Burr*, 551 U.S. 47 at 57-58. The Complaint fails to provide any factual support that Defendant BSB acted willfully, with knowledge, or with disregard for the FCRA's requirements. These blanket allegations of willfulness do not survive Rule 12(b)(6). *See, e.g., Hutchinson v. Cargo Grp., Inc.*, 2015 WL 5698283, at \*7 (E.D. Pa. Sept. 29, 2015) (Padova, J.) (dismissing claim because "the Complaint… simply alleged no factual basis on which to rest an inference that [defendant] acted recklessly or willfully"). Therefore, because Plaintiff has not adequately alleged that Defendant BSB acted willfully, she is ineligible for punitive or statutory damages.

## B. A private right of action does not exist under § 1681s-2(a).

Claims brought under § 1681s-2(a) fail as a matter of law because the provision affords no private right of action to a citizen seeking damages against a furnisher. "[The] FCRA explicitly precludes private suits for failure to comply with [the] statut[e]." *Seamans*, 744 F.3d at 864. "The only section that can be enforced by a

private citizen seeking to recover damages caused by a furnisher of information" is § 1681s-2(b). *SimmsParris*, 652 F.3d at 358. A furnisher's relevant duties arise only after it receives a notice of dispute that calls into question the veracity or completeness of the information it has furnished to other CRAs. *Id.* That notice must come from a CRA, not a consumer. *Id.*

Accordingly, Plaintiff's two broad contentions—(1) that Defendant BSB "willfully and negligently supplied the [CRAs] with information… that was false, misleading, and inaccurate" and (2) that Defendant BSB "failed to mark its account as disputed by Plaintiff"—cannot address Defendant BSB's conduct before it received the notice of dispute from Defendant TransUnion, because no private right of action existed then. Compl. ¶ 29-30.

A cause of action against Defendant BSB would commence when BSB was notified by the CRA of Plaintiff's claims of inaccuracies in its reporting. Accepting the facts as pled in the Complaint as true, after Defendant BSB's notification of alleged errors in its reporting, it properly investigated (and reinvestigated) and twice provided Plaintiff with the results of its investigation. The statute does not require the furnisher to agree with Plaintiff. The furnisher's obligation is to investigate and promptly report its findings, which, according to Plaintiff, it did.

Plaintiff's complaint suffers from a final flaw. The Complaint alleges that Defendant BSB "failed to properly participate, investigate, and comply with the reinvestigations that were conducted by and all [CRA]s." Compl. ¶ 33. The Statute, however, does not impose those obligations on furnishers. *See* § 1681s-2(b). Stated

13

differently, Plaintiff's Complaint seeks to increase the statutory duties enumerated by § 1681s-2(b).  As a result, this allegation fails as a matter of law since no right of action exists.

### C. Amending the complaint will be futile.

Dismissal with prejudice may be warranted when amending the original complaint would be futile.  *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004).  "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  The Court recognizes that amendments should be liberally permitted Fed. R. Civ. P. 15(a)(2) and that "[w]ithin limits, a plaintiff is permitted to make allegations in an amended complaint that contradict previous allegation[s], even where [it] is obvious that the changes were for the purpose of avoiding dismissal."  *Scott v. Close*, No. 3:21-CV-46-SLH-KAP, 2021 WL 11699255, at *2 (W.D. Pa. Aug. 3, 2021), *report and recommendation adopted*, No. 3:21-CV-46, 2022 WL 20563935 (W.D. Pa. Apr. 21, 2022) (citing *West Run Student Housing Assoc., LLC v. Huntington National Bank*, 712 F.3d 165, 171-73 (3d Cir. 2013).  However, the Court must ensure that amendments comport with the principles of merit and good faith.  Where an amended complaint makes a 180-degree reversal of previous allegations or attempts to avoid defects set forth in a prior complaint by omitting them without explanation, the Court may deny leave to amend and dismiss with prejudice.  *See id.* citing *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324–25 (Fed. Cir. 1998).

Here, the flaws in Plaintiff's pleadings stem not only from a lack of factual support but also from an illogical tension within Plaintiff's own allegations.  The

14

Complaint admits that upon receiving the notice of dispute, Defendant BSB "verified" the information in question as accurate, and that after each verification, Defendant TransUnion relayed those "investigation results" to Plaintiff.  Compl. ¶ 12, 13, 15, 17. Plaintiff's own allegations establish that Defendant BSB conducted an investigation—exactly what Plaintiff claims Defendant BSB failed to do.  Therefore, amending the original complaint would be futile because Plaintiff would have to completely alter the facts to which she has already admitted in order to state a claim. Put differently, Plaintiff's cause of action would require an amended complaint that directly contradicts her original complaint. Permitting such an amendment would encourage the parties to be less than candorous with the court. *See* Pa. R. P. C. §3.3 and Fed. R. Civ. P. 11.[3]   As such, amendment would not comport with the principles of merit and good faith and would be futile.

---

[3]     Our justice system depends upon the good-faith honesty of those who appear before the courts. Litigants and attorneys alike bear an obligation to deal truthfully with the tribunal, for without candor, the fair administration of justice is undermined.  The Court recognizes that this obligation is not always honored.  Nevertheless, it is the firm conviction of the Undersigned that the judiciary has both the authority and the duty to insist upon these standards.  By doing so, the courts safeguard not only the integrity of the proceedings before them but also the very foundation of the rule of law and the public's confidence in our system.

Every question The Pennsylvania Rules of Professional Conduct provide that a "lawyer shall not knowingly make a false statement of fact… to a tribunal," "fail to correct a false statement of material fact," or "offer evidence the lawyer knows to be false."  Pa. R. P. C. §3.3.  In order for an amended complaint to be viable in this action, Plaintiff would have to assert a position in clear contradiction to the facts asserted here.  It is presumed that the facts as asserted in the operative complaint are consistent with the facts provided to counsel at the time of engagement.

Permitting counsel to reverse course now and argue a complete contradiction in an amended complaint would endorse dishonesty in factual pleadings.  Such an action would not only violate the rules of Professional Conduct but also have potential Rule 11 implications.  The Court finds this case distinguishable from *West Run*, where the Third Circuit held that a complaint could be amended "to cure a purported factual mistake."  *See West Run Student Housing Assoc., LLC*, 712 F.3d at 171.  This Court views the panel's decision regarding amendment as bound to situations involving only these factual corrections.

Here, for amendment to be operable, Plaintiff would have to go beyond merely correcting a narrow factual mistake; she would have to plead a complete reversal of the position she articulated in her initial complaint.  To be sure, the Court does not accuse Plaintiff of committing any factual

**CONCLUSION**

For the foregoing reasons, Defendant BSB's Motion is granted, and Plaintiff's

Complaint is dismissed with prejudice.

An appropriate order follows.

BY THE COURT:

_____

GAIL A. WEILHEIMER          J.

DATED:  7/13/26

---

misrepresentations here.  However, the Court does not want to provide a forum that promotes dishonesty in the service of a client.  This Court is unwilling to diminish our justice system by endorsing an action that would clearly encourage anything less than complete candor.

Finally, when given the opportunity to amend her Complaint, Plaintiff expressly declined.  The Third Circuit does permit dismissal with prejudice when a plaintiff has been given an express opportunity to amend and a reasonable period to do so yet elects to forgo amendment.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108-09 (3d Cir. 2002).  More than two weeks before Defendant BSB filed its Motion to Dismiss, BSB's counsel initiated substantive conferral with Plaintiff's counsel regarding the Complaint's deficiencies, during which BSB's counsel asked whether Plaintiff would amend her Complaint.  *See* Meet and Confer Certification §§ B and C.  Plaintiff declined.  *See id.* § F. When Defendant BSB inquired for a second time whether Plaintiff wished to amend her Complaint, Plaintiff again declined.  *See id.*  Plaintiff's unwillingness to amend her Complaint, even after receiving notice of its deficiencies, leads the Court to believe that any amendment beyond this point would transcend the mere factual adjustment mentioned in *West Run*.